DAVISON-NICHOLSON COMPANY *v.* POUND.

GEORGE, J. 1. While the Supreme Court can not, on a fast writ of error, review an order dissolving a temporary restraining order, the Civil Code, § 6153, provides that in all cases where an application for an interlocutory injunction is granted or refused, a fast writ of error will lie; and where, after hearing as provided in §§ 5501, 5502, the judge refuses an interlocutory injunction, his judgment so refusing is reviewable by this court on a fast writ of error, although upon such hearing the judge considered a motion to dissolve the restraining order theretofore granted, and a demurrer to the petition for injunction, as defensive to the grant of the relief prayed. *Harris* v. *City of Sparta,* 130 *Ga.* 61 (60 S. E. 192) ; *Richards* v. *McHan,* 139 *Ga.* 38 (76 S. E. 382).

2. While the judge of the superior court can not hear and determine a demurrer at the interlocutory hearing for injunction, a demurrer which challenged the rights of petitioner to the injunction could be considered as a legal showing against the interlocutory relief prayed. *Bank of Soperton* v. *Empire Realty Trust Co.,* 142 *Ga.* 34 (3), 35 (82 S. E. 464).

3. The act of the legislature establishing the State Normal School as a branch of the University of Georgia, approved October 21, 1891 (Acts 1890-1891, p. 126), conferred upon the board of trustees of that institution authority "to ordain and establish such rules and by-laws for the regulation of the school and the training and governing of the

students, not inconsistent with this act, as in their opinion may be proper to secure the success of said school." The powers and duties of this board of trustees have not been abrogated or changed by any subsequent act of the legislature. (See act approved October 13, 1901, Ga. Laws 1914, pp. 86, 88; act approved August 13, 1912, Ga. Laws, 1912, p. 178.)

4. By admission it appears that the board of trustees of the institution aforesaid ordained and passed regulations requiring a certain uniform to be worn by the students, uniforms to be furnished by the individual students, and that the board of trustees delegated to the president of the school the authority to advertise for bids for the furnishing of uniforms to the students in attendance at the school. The uniform required may be bought from the accepted bidder, or from any other seller, according to the individual preference of the student. No student has been denied the right to buy the uniform from any seller. The president of the school has refused and still refuses to accept the bid submitted by the plaintiff, to furnish uniforms to the student body of the institution, has refused and still refuses to permit it to go upon the campus of said institution for the purpose of selling and offering for sale its goods and merchandise, and is exercising his influence as such president to induce the members of the student body to purchase uniforms from merchants other than plaintiff, and not from plaintiff. *Held:*

(*a*) That the act approved October 21, 1891 (Ga. Laws 1890-1891, p. 126), confers upon the governing board of the school plenary powers to ordain and enact rules and regulations for the management and control of the school and its student body; and a court of equity will not interfere with its discretionary action and will not control it, or the president of the institution acting for it, in receiving, considering, accepting, or rejecting bids from those desiring to furnish the uniforms required to be used by the students at such institution; and will not by injunction restrain the president from interfering with the plaintiff, its agents and servants, in going upon the campus of the institution for the purpose of selling and offering for sale its goods and merchandise to the student body or the individual students; and will not attempt to restrain the exercise of influence by the president of the institution over the students in the matter of purchasing uniforms. *Southern Mining Co.* v. *Lowe,* 105 *Ga.* 352 (31 S. E. 191); *Peeples* v. *Byrd,* 98 *Ga.* 688 (25 S. E. 677).

(*b*) That the right to protect a public educational institution and its student body is equal to or superior to the right of one, as a merchant, desiring to deal with such institution or its students, and a wide discretion is necessarily vested in its governing board to determine the conditions on which such person may deal with the institution or student body; and if this discretion is exercised in good faith, there will, in general, according to respectable authority, be no liability to one with whom the students have been forbidden to deal. See Nims on Unfair Competition etc. (2d ed.), 366, § 177; *Gott* v. *Berea College,* 156 Ky. **376 (161** S. W. 204, 51 L. R. A. (N. S.) 17); *Guethler* v. *Altman,* **26**

Ind. App. 587 (60 N. E. 355, 84 Am. St. R. 313); McKee *v.* Hughes, 133 Tenn. 455 (181 S. W. 930, L. R. A. 1916D, 391). The facts in the instant case do not require the extension of the doctrine as indicated above, but the peculiar relations existing between the governing board of the institution and its students justify the exercise of a certain discretionary control over the action of the latter; and so long as this discretion is exercised in good faith in the best interest of the institution and its students, no right of action, legal or equitable, arises in favor of one, as a merchant, who has been thereby subjected to what might, in other circumstances and relations, amount to unfair competition.

5. It follows from the foregoing that the motion to dismiss the writ of error must be denied; but the judgment of the court refusing the interlocutory injunction is      *Affirmed. All the Justices concur.*

No. 420.    DECEMBER 13, 1917.

Petition for injunction. Before Judge Hodges. Clarke superior court. May 26, 1917.

*W. W. Stark, John B. Gamble,* and *George C. Thomas,* for plaintiff.

*Thomas S. Mell, Hamilton McWhorter,* and *M. P. McWhorter,* for defendant.